ELIJAH & WINNE, Appellees, v. B. F. MOTTINGER, Appellant.

Sales: CONSTRUCTION OF CONTRACT. OWNERSHIP. Under a contract
1  for the sale of personal property, followed by delivery of possession, in which the purchaser absolutely agreed to pay the purchase price, and providing that in case of a breach the amount paid should remain in the possession of the seller, and that the purchaser should use the team only in connection with the sellers business, the purchaser became the owner of the property subject to the sellers rights by way of security for the debt.

Same:  RESTRICTIONS AS TO USE AND ALIENATION.  Ordinarily the vendor
2  of personal property cannot by the terms of the contract of sale
restrict the future use or alienation of the property.

Same:  SPECIFIC PERFORMANCE.  Contracts for personal services are not
3  usually specifically enforceable;  the ordinary remedy is an action
for damages.

Same:  CONDITIONAL SALES:  FORFEITURES.  Under a contract for the
4  sale of personal property to be paid for in installments, but giving
the purchaser the right to pay the full amount at any time; and
also providing that the purchaser should use the property in the
sellers business, and in case of breach he should have the right to
retain all payments made; *Held*, that time was not the essence of
the contract, and the seller having waived certain payments by his
conduct could not claim a forfeiture of the property for the breach,
where on the day of the breach he tendered the full amount due.

*Appeal from Linn District Court*, HON. MILO P. SMITH, Judge.

THURSDAY, SEPTEMBER 25, 1913.

ACTION of replevin for the possession of a team of horses
and a wagon and harness.  The action is based on a written
contract which will be set out in the opinion.  There was a
trial to a jury and a verdict and judgment for the plaintiffs.
The defendant appeals.  *Reversed* and *Remanded*.

*William G. Clark* and *W. E. Steele*, for appellant.

*Rickel & Dennis*, for appellees.

EVANS, J.—The petition of the plaintiffs was based on the
following written contract:

This agreement, made this 8th day of May, A. D. 1909,
between Elijah & Winne, party of the first part, and B. F.
Mottinger, party of the second part, of Cedar Rapids, Iowa,
as follows:  The party of the first part hereby agrees to sell
to the party of the second part, on the performance of the
agreement as hereinafter stated, all their rights, title and

interest in and to the following described property now in their possession and located in Cedar Rapids, Iowa: One light gray gelding named Dan, six (6) years old; one dark gray gelding, named Barney, six (6) years old; one Old Hickory double wagon; one set of double harness; two weather blankets; one coal box—all comprising one outfit for cartage of coal, for the sum of five hundred and forty-nine ($549.00) dollars, payable as hereinafter mentioned; and the said party of the second part in consideration of the above-named outfit hereby agrees to and with the party of the first part to purchase all their right, title and interest in and to the outfit above described for the sum of five hundred and forty-nine ($549.00) dollars and to pay said sum therefor, to the party of the first part, their heirs or assigns as follows: Five ($5.00) dollars per week from the date of this instrument until such time as these weekly payments equal the consideration above mentioned. Should the party of the second part at any time desire to exceed the weekly payments, or pay the entire remaining amount, privilege is hereby granted by said first party. This instrument is made upon the expressed condition and as a part of the consideration hereof, that said second party shall use the above-named outfit for no other purpose than that of delivering coal in and about the city of Cedar Rapids, Iowa, for said party of the first part; said outfit to be driven and cared for in the proper manner by the party of the second part. It is also agreed that should said second party at any time, during the life of this agreement fail to carry out the conditions stated in this contract, the amount paid to that time shall remain in the possession of said first party, said second party waiving all claim and right to these payments. Witness our hand, the days and years above written. Elijah & Winne, by F. H. Elijah.  B. F. Mottinger.

By an amendment to their petition, the plaintiffs pleaded a subsequent, oral modification of the written contract whereby it was agreed: "That defendant should be allowed to use the team in controversy for hauling generally for other parties when the team was not needed in their coal business; but that when said team was needed by plaintiff, it was to be furnished and used by defendant in accordance with the terms of said contract." They pleaded a breach of the contract in

two respects: (1) That the defendant had failed to make the weekly payments provided by the contract; and (2) that he had used and was using said team for others than the plaintiffs at a time when the plaintiffs needed the use of the same. They declared and pleaded a forfeiture of the contract for such reason, and in pursuance of such forfeiture they claimed the right of possession of such property.

The defendant, answering, admitted the written contract. Referring to the conditions thereof alleged to have been breached, he pleaded that strict performance of each had been waived by plaintiffs. He further pleaded that, prior to the bringing of this suit, he had paid more than $300 of the purchase price and that he had tendered to the plaintiffs the full balance of the purchase price due them which they refused to receive. He also brought his tender into court. He pleaded in substance that his obligations to the plaintiffs were fully discharged by such previous payments and tender of the full purchase price, and that the plaintiffs had no further enforceable interest in the conditions of the contract. He pleaded further that such contract did not by its terms confer upon plaintiffs a right to reclaim possession of the property or to forfeit the defendant's ownership thereof.

The plaintiffs were coal dealers at Cedar Rapids. The defendant was a teamster without other means than the results of his labor. After the purchase of the team and wagon he engaged in teaming. The larger part of his teaming or hauling was done for the plaintiffs. He also did teaming for other parties at times when the plaintiffs were unable to furnish him with sufficient work. He was not employed by the plaintiffs either by the month or by the day but was paid certain rates for work actually done. The plaintiffs did not at any time bind themselves to furnish him with sufficient work for himself and team, but they did furnish such work at the busy seasons of the year. There were seasons when they furnished him little or no work. The plaintiffs testified that at such times he had their express consent to work with his team

for whomsoever he could. The amount due defendant from the plaintiffs for work done was paid him at the end of each week, less deductions of amounts applied on the contract sued on.

In the course of more than two years from the date of contract to October 10, 1911, the defendant had earned from the plaintiffs more than $2,000. Out of this sum a little more than $300 had been retained by the plaintiffs to apply on the contract, and the balance had been voluntarily paid from week to week to the defendant. It was stipulated at the trial that the balance unpaid on the contract was $236.95 in May, 1911. It does not appear that anything was paid since that date except by way of tender. On October 7, 1911, the plaintiffs paid the defendant $21 as the amount earned by him in the previous week. On October 11, 1911, a balance of $6 was paid to him. The sums retained by the plaintiffs to apply on the contract were frequently in smaller amounts than $5. The trouble that separated the parties occurred on October 10, 1911. The defendant had worked for the plaintiffs for a part of that day. On the same day he hauled a load of coal for another coal dealer. This act appears to have been the occasion, if not the cause, of the controversy between the parties hereto. On the same day the defendant tendered to the plaintiffs the full amount due them under the contract. This tender was refused. This refusal was based upon the ground that the plaintiffs were entitled to a more drastic remedy. The defendant was given until 4 o'clock to return to work with the team to the plaintiffs' yards or submit to forfeiture of all right to the team. To the extent here stated the facts are without substantial dispute. Applying these undisputed facts to the contract in suit, we think they are quite conclusive against the plaintiffs and we need not dwell upon the details of the specific errors assigned.

I. First of all, the contract itself must be construed. Possession of the property was given to the defendant at the time

of the execution of the contract. Did the defendant thereby

**1. SALES: construction of contract: ownership.** become the owner of the property, or did the plaintiffs continue to be the "full and unqualified owners" thereof as pleaded in their petition? To whom was the property taxable, and upon whom must the loss fall in case of its destruction? The defendant had bound himself absolutely to pay for it, and his obligation was enforceable against him personally in a legal sense. We see little room for dispute but that the ownership of the property rested in him subject only to the right and remedy conferred by the contract upon the plaintiffs by way of security for the collection of the purchase price. *Sewell v. Underhill,* 197 N. Y. 168 (90 N. E. 430, 27 L. R. A. [N. S.] 233, 134 Am. St. Rep. 863, 18 Ann. Cas. 795); *Dentzel v. Park Assoc.,* 229 Pa. 403 (78 Atl. 935, 33 L. R. A. [N. S.] 54); *In re Boyle,* 154 Iowa, 249; *Nungesser v. Hart,* 122 Iowa, 647. That a qualified right of property was reserved to the plaintiffs may be conceded, but it was such a right as is frequently incident to the security of the purchase price.

We do not overlook the "express condition" which required the defendant to use the "outfit for no other purpose than that of delivering coal in and about Cedar Rapids for

**2. SAME: restrictions as to use and alienation.** said party of the first part." If such condition could be construed as a perpetual obligation on the part of the defendant to work his team in the services of the plaintiffs, there are manifest reasons why it could not be enforced. A vendor of personal property cannot ordinarily restrict the future use or alienation of the property. *Park v. Hartman,* 153 Fed. 24 (82 C. C. A. 158, 12 L. R. A. [N. S.] 144); *Hill v. Gray,* 163 Mich. 12 (127 N. W. 803, 30 L. R. A. [N. S.] 334). Slaves and heirlooms and contracts relating thereto seem to present the only exceptions to this rule.

There is the further consideration that contracts for personal services are not usually specifically enforceable. Specific

performance in such a case would trench too closely on "in-

3. SAME: specific voluntary servitude." *Gossard Co. v. Crosby,*
performance. 132 Iowa, 155; *Arthur v. Oakes,* 63 Fed. 310,
(11 C. C. A. 209, 25 L. R. A. 425). Usually an action for damages furnishes the only available remedy in such a case. It is to be noted also that there is nothing in the contract whereby the plaintiffs bind themselves to any performance either as to the amount of work to be furnished or the price to be paid.

Looking at this provision, however, as an element of security for the payment of a debt, it presents a somewhat different face; and for the purpose of this case we may assume, without deciding that it is not wholly

4. SAME: con-
ditional sales: nugatory as a means of mere security to the
forfeitures. plaintiffs in the collection of their debt. We are satisfied, however, that it is not capable of specific enforcement in any other respect.

Turning again to the contract, it does not make time of payments of the essence of the contract; it does not in express terms give to the plaintiffs the right to retake possession of the property without legal process; it does not provide for a forfeiture of the property to the plaintiffs. Doubtless the absence of a right of forfeiture would not interfere with the right of rescission in an appropriate case, but the plaintiffs claim a right of forfeiture and not of rescission. If the plaintiffs were in fact entitled to rescind, we should hesitate to draw the line too fine between rescission and forfeiture. But it is clear that under the undisputed evidence and under the provisions of the contract they are not entitled even to rescind. Even if the time of payment had been of the essence of the contract, this condition was expressly and repeatedly waived by the plaintiffs in the voluntary payments made by them to the defendant from week to week. The condition that the team should be used only in work for the plaintiffs was concededly waived. The only dispute at this point is the extent or qualification of such waiver. According to the plaintiffs' own testimony, the first breach of which they complain occurred Octo-

ber 10, 1911. Before 2 o'clock of the same day the defendant had tendered to them the full amount due them and such tender has been kept good ever since. The legal effect of such tender was full performance of the contract. It rendered the plaintiffs without legal cause of further complaint. They had no need of further remedy. The provisions of the contract which were intended for their protection in the collection of the debt were fully obeyed by the tender of the price.

The argument of the appellees is that the tender came too late in that plaintiffs had an absolute right to declare a forfeiture at the time the tender was made, and that they had therefore a right to decline the tender and insist on the forfeiture. As already indicated, we find no such right of forfeiture in the contract. If there were, the tender was made before any formal declaration of forfeiture and before the beginning of the suit. It appears from the records that the petition was filed on October 10th. It does not appear at what hour. No service appears to have been made until the next day.

We do not overlook the claim and contention of the plaintiffs, both in argument and in evidence, that they sold this outfit to the defendant in order to further their own business interests and in order to enable them to secure the services of the defendant and the team when the demands of their business required it. The claim is that, as long as the debt remained unpaid, they had a right to demand specific performance under penalty of forfeiture. If this were conceded, it could not save the plaintiffs' case. The legal effect of the tender was equivalent to payment. The purchase price was not therefore unpaid when the alleged forfeiture was declared and suit for possession brought.

We reach the conclusion that the defendant was entitled to the possession of the property and to a directed verdict in his favor to that effect. This action is replevin. The right of possession is the ultimate question therein. Our finding on such question is therefore decisive of this appeal.

The judgment below must be reversed.—*Reversed* and *Remanded.*